IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GINA R. BELLINGER, on behalf of herself and as trustee for the JOHN A. BELLINGER 2018 FAMILY TRUST and the GINA R. BELLINGER 2010 TRUST, and JOHN W. BELLINGER, as trustee for the LAUREN V. BELLINGER 2018 FAMILY TRUST and the JOHN W. BELLINGER 2010 TRUST, <br><br> Plaintiffs, <br><br> v. <br><br> LABORATORIES TOPCO LLC, WARBURG PINCUS (CALLISTO) PRIVATE EQUITY XII (CAYMAN), L.P., WARBURG PINCUS (EUROPA) PRIVATE EQUITY XII (CAYMAN), L.P., WARBURG PINCUS (GANYMEDE) PRIVATE EQUITY XII (CAYMAN), L.P., WARBURG PINCUS PRIVATE EQUITY XII-B (CAYMAN), L.P., WARBURG PINCUS PRIVATE EQUITY XII-D (CAYMAN), L.P., WARBURG PINCUS PRIVATE EQUITY XII-E (CAYMAN), L.P., WP XII PARTNERS (CAYMAN), L.P., WARBURG PINCUS XII PARTNERS (CAYMAN), L.P., and TILIA FUND I AIV, L.P., <br><br> Defendants. | Civil Action No. 23-695-RGA |

MEMORANDUM OPINION

Kevin M. Coen, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Marc E. Kasowitz, Albert Shemmy Mishaan, Melissa A. Barahona, KASOWITZ BENSON TORRES LLP, New York, NY,

    Attorneys for Plaintiffs.

1

David E. Ross, Bradley R. Aronstam, S. Reiko Rogozen, ROSS ARONSTAM & MORITZ LLP, Wilmington, DE; Faith E. Gay, David S. Flugman, Laura M. King, Xinchen Li, SELENDY GAY PLLC, New York, NY,

> Attorneys for Defendants Laboratories Topco LLC, Warburg Pincus (Callisto) Private Equity XII (Cayman), L.P., Warburg Pincus (Europa) Private Equity XII (Cayman), L.P., Warburg Pincus (Ganymede) Private Equity XII (Cayman), L.P., Warburg Pincus Private Equity XII-B (Cayman), L.P., Warburg Pincus Private Equity XII-D (Cayman), L.P., Warburg Pincus Private Equity XII-E (Cayman), L.P., WP XII Partners (Cayman), L.P., Warburg Pincus XII Partners (Cayman), L.P.

James M. Yoch, Jr., YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Brian J. Massengill, Linda X. Shi, MAYER BROWN LLP, Chicago, IL,

> Attorneys for Defendant Tilia Fund I, AIV, L.P.

March 28, 2024

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is the Report and Recommendation of a United States Magistrate Judge. (D.I. 37). The Report addresses two motions to dismiss: one filed by Laboratories Topco and various Warburg entities (collectively "Warburg Defendants") (D.I. 12) and one filed by Defendant Tilia Fund I AIV ("Tilia") (D.I. 15). It recommends that I grant the motions with respect to Plaintiffs' breach of contract and common law fraud claims and deny the motions with respect to Plaintiffs' Securities Exchange Act and Texas Securities Act claims. (D.I. 37 at 19).

Tilia and Warburg Defendants filed partial objections to the Report. (D.I. 39, 40). Plaintiffs responded. (D.I. 41). For the reasons set forth below, I will adopt-in-part and reject-in-part the factual findings and legal conclusions in the Report. I do not separately recite any of the facts except as I see necessary to explain my decision.

I. **BACKGROUND**

Prior to the present dispute, John and Gina Bellinger owned FSNS, "an LLC that provided microbiological, chemical, and nutritional laboratory testing for the food and beverage industries." (D.I. 37 at 2 (citing D.I. 1 ¶¶ 2–3)). In 2021, Warburg and Tilia—through Stephanie Geveda and Johannes Burlin, their respective representatives—approached the Bellingers about a business deal. (*Id.* (citing D.I. 1 ¶ 34)). The Bellingers thereafter entered into the Subscription Agreement, under which they sold FSNS to, and invested $100 million in, Topco, a Delaware company formed to consolidate Warburg and Tilia's laboratories. (D.I. 1 ¶¶ 11, 28–29, 34, 42). Mr. Bellinger became Topco's new CEO. (*Id.* ¶ 49).

Plaintiffs allege that after the investment, they discovered Topco "did not have the infrastructure to support the basic operations of its ten existing labs." (*See id.* ¶¶ 48–56). They sued Topco, Tilia, and various Warburg entities, asserting breach of contract, common law fraud,

3

securities fraud under the Securities Exchange Act, and securities fraud under the Texas Securities Act. (D.I. 1 ¶¶ 60–92).

## II. LEGAL STANDARD

### A. Rule 12(b)(6) and the PSLRA

Federal Rule of Civil Procedure 8(a)(2) requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Federal Rule of Civil Procedure 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible is a "context-specific

4

task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

All securities fraud claims are subject to the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act (the "PSLRA"). *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Put another way, Rule 9(b) requires that a plaintiff set forth "the who, what, when, where, and how" of the alleged fraud. *Avaya*, 564 F.3d at 253. Under the PSLRA, plaintiffs must: (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading"; and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (quoting 15 U.S.C. § 78u–4(b)(1) and 15 U.S.C. § 78u–4(b)(2)).

### B. Standard of Review

A magistrate judge may make a report and recommendation regarding a case-dispositive motion. *Beazer E., Inc. v. Mead Corp.*, 412 F.3d 429, 444 (3d Cir. 2005). "When reviewing the decision of a Magistrate Judge on a dispositive matter, the Court conducts a de novo review." *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 379 (D. Del. 2014) (citing 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)). A motion for summary judgment is considered a dispositive motion. D. Del. LR 72.1(a)(3). The Court may accept, reject, or modify the Magistrate Judge's recommendation. Fed. R. Civ. P. 72(b)(3).

### III. DISCUSSION

The Report held that Plaintiffs' breach of contract claim is barred by anti-reliance provisions in the Subscription Agreement. (D.I. 37 at 7). The Report also held that the terms of

the Subscription Agreement bar Plaintiffs' common law fraud claim. (*Id.* at 11). The Magistrate Judge therefore recommended dismissal of Counts I and II of the Complaint. (*Id.* at 19). The Report further held that Plaintiffs' allegations are sufficient to plead federal and state securities fraud claims. (*Id.* at 18). The Magistrate Judge therefore recommended that the motions to dismiss be denied with respect to Counts III and IV of the Complaint. (*Id.* at 19).

Plaintiffs do not object to the Magistrate Judge's recommendation regarding Counts I and II.[1] I agree with that recommendation. In any event, given my disposition of the only federal claim, I would alternatively dismiss Counts I and II discretionarily since their only jurisdictional basis is supplemental jurisdiction. Either way, the dismissal would be without prejudice. I will therefore dismiss Plaintiffs' breach of contract and common law fraud claims. I will consider Defendants' objections[2] regarding the Magistrate Judge's findings on Plaintiffs' Securities Exchange Act and Texas Securities Act claims.

### A. Securities Exchange Act

#### 1. Securities

Defendants argue that Plaintiffs' interests in Topco are not securities. (D.I. 39 at 9). Defendants contend that Plaintiffs' profits from Topco would not derive "solely from the efforts of others." (*Id.*). Defendants note that Mr. Bellinger became Topco's CEO and Plaintiffs joined the company's board. (*Id.*). Defendants argue the Report: (1) "incorrectly discounts Plaintiffs'

---

[1] Plaintiffs state, "Although Plaintiffs maintain they adequately pled those claims, Plaintiffs do not challenge Judge Hatcher's determination that, among other things, the claims were duplicative of Plaintiffs' security claims and barred by the relevant contract's anti-reliance provisions." (D.I. 41 at 1 n.2).

[2] Tilia incorporates by reference all arguments in Warburg Defendants' partial objections. (D.I. 40 at 2). Warburg Defendants incorporate by reference Tilia's arguments as well. (D.I. 39 at 10 n.9). I therefore address the objections together.

6

management of Topco as 'nominal or limited'"; (2) incorrectly distinguishes *Rossi v. Quarmley*, 604 F. App'x 171 (3d Cir. 2015); and (3) "wrongly focuses on the fact that only Mrs. Bellinger and trusts managed by herself and Mr. Bellinger (but not Mr. Bellinger personally) are plaintiffs." (*Id.* at 9–10).

I agree with the Magistrate Judge that the allegations are sufficient for me to decide that it is plausible that Plaintiffs' interests are securities. The Magistrate Judge found that exhibits in Defendants' briefing "reveal that Warburg is guaranteed control of the board through its right to appoint a majority of the members." (D.I. 37 at 12–13). On the other hand, the Magistrate Judge found that "Topco is managed by a board of managers and [] Plaintiffs are entitled to representation on that board." (*Id.* at 12). Contrary to Defendants' contention, the Magistrate Judge did not conclude that Plaintiffs' management of Topco is nominal. Instead, the Magistrate Judge held that it is plausible that Plaintiffs' profits from Topco would come solely from the efforts of others. (*Id.* at 13). I adopt that finding. I do not think the remaining issues Defendants raise—whether Mr. Bellinger's role at Topco should be imputed to all Plaintiffs, and whether the Magistrate Judge properly distinguished *Rossi*—disturb my conclusion.

### 2. Misrepresentation or Omission

Defendants argue the Report "does not find any standalone affirmative misrepresentations." (D.I. 39 at 2). Defendants contend that the following two statements do not give rise to a securities fraud claim: "(1) that the previous CEO needed to be replaced because he 'did not want to travel during COVID-19' and (2) that 'Topco was performing well with high

7

growth potential, strong earnings and no material operational or performance issues.'" (*Id.* at 3 (quoting D.I. 37 at 16–17)).³

First, Defendants object to the Magistrate Judge's finding that Defendants were obligated to disclose problems with Topco under the former CEO's leadership after misrepresenting the reason for his departure. (*Id.*). Defendants contend "the Complaint pleads no facts as to the purported true reason for removing the former CEO, what 'significant harm' he purportedly caused, or how that supposed harm affected the company or Plaintiffs' decision to invest." (*Id.*). Defendants also object to the Report's reliance on *Kronenberg v. Katz*, 872 A.2d 568 (Del. Ch. 2004), arguing that the case "involves neither a federal securities claim nor the PSLRA and is entirely inapposite." (*Id.* at 4; *see also* D.I. 40 at 5–6).

Second, Defendants object to the Magistrate Judge's finding that Defendants were obligated to disclose additional information to correct their statement about Topco's "high growth potential, strong earnings, and [lack of] material operational or performance issues." (D.I. 39 at 4–5). Defendants contend this statement does not create a duty to disclose because it is puffery. (*Id.* at 5). They further argue that Plaintiffs do not "plead specific facts explaining why the purported representations about Topco's financial performance were false or rendered false by the alleged omissions." (*Id.*).

Third, Defendants argue that even if they had a duty to disclose certain information, the Report "does not specify any fact 'sufficiently closely connected' to prior statements and that Defendants were obligated, but failed, to disclose." (*Id.* at 6). Defendants contend the Complaint, instead of pleading that Defendants should have disclosed details about each of its

---

³ Tilia argues, "The Complaint's allegations regarding Tilia do not provide the required specificity on when the statements were made, what was purportedly said, and why the statement was misleading." (D.I. 40 at 5).

ten laboratories' testing methods, "only pleads that two of Topco's ten labs did not use validated testing, which Plaintiffs allegedly learned from the FDA letters." (*Id.*). Defendants argue these purported omissions are not actionable because the FDA warning letter about one lab was publicly available, while issues with the second lab were only discovered after Mr. Bellinger took over as CEO. (*Id.* at 6–7).[4]

Under the PSLRA, the "materiality requirement is satisfied when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (cleaned up). Although there is no affirmative duty to disclose all material information, disclosure is required if it is necessary "to make . . . statements made, in the light of the circumstances under which they were made, not misleading." *Id.* at 44 (quoting 17 C.F.R. § 240.10b–5(b)). Misrepresentations and omissions are immaterial only if they "are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality." *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 369 n.13 (3d Cir. 1993).

### a. Former CEO

I disagree with the Magistrate Judge that Plaintiffs have met the PSLRA's materiality standard. Plaintiffs allege that Ms. Geveda and Mr. Burlin misrepresented the reasons for replacing Topco's former CEO when they explained that the CEO did not want to travel during

---

[4] Tilia also argues that the Complaint is deficient because it "makes blanket allegations throughout regarding 'Defendants' and their alleged representations, or attributing those alleged representations generally to Warburg Pincus and Tilia and their 'agents' and 'representatives,' or to both Stephanie Geveda (Warburg Pincus Managing Director) and Johannes Burlin (Tilia co-CEO and co-founder)." (D.I. 40 at 3–4).

9

the pandemic. The Complaint, however, does not specify when or why the former CEO left Topco. The Complaint thus does not plead with particularity "the reasons why" the statement about the former CEO is false or misleading. *Avaya*, 564 F.3d at 252. Because Plaintiffs do not plead any facts suggesting the former CEO left for a different reason than the one Ms. Geveda and Mr. Burlin provided, the statement cannot be construed as an omission. Without allegations about omitted or false information, the statement is not a material misrepresentation.

### b. Operational and Performance Issues

I also disagree with the Magistrate Judge that Plaintiffs meet the PSLRA's materiality standard by alleging that Ms. Geveda and Mr. Burlin made statements about high growth potential, "strong EBITDA," and a lack of material operational or performance issues at Topco. (D.I. 1 ¶ 40).

First, I agree with Defendants that the statements about high growth potential and strong EBITDA are puffery.[5] "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993). Puffery statements "are so vague and such obvious hyperbole that no reasonable investor would rely upon them." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 547 (8th Cir. 1997). Because puffery is so "obviously" unimportant, "courts can rule them immaterial as a matter of law at the pleading stage." *In re Aetna, Inc. Sec. Litig.*, 617 F.3d 272, 283 (3d Cir. 2010) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Ms. Geveda and Mr.

---

[5] There is a lot that is noticeably absent from the Complaint. What was the actual EBITDA? The Complaint is silent. It does not assert that anybody connected with Defendants provided any inaccurate numbers about revenues, profits, EBITDA, etc. Instead, the Complaint appears to allege that Plaintiffs invested $100,000,000 in Topco without doing any due diligence at all, and despite "Defendants . . . refus[ing] to provide the Bellingers with any documentation regarding the financials or other information regarding [Topco]." (D.I. 1 ¶ 40).

10

Burlin's statements that Topco had high growth potential and "strong EBITDA" are so broad and vague that no reasonable investor would rely on them. Neither statement satisfies the PSLRA pleading standard.

Second, Plaintiffs do not plead facts with sufficient particularity to support a finding that the statement about "no material operational or performance issues" is material. The Complaint alleges,

> Defendants knowingly, or recklessly, omitted and concealed material facts about the Certified Labs, including the fact that (i) ABC Testing's testing methods were not validated, that the lab was subject to FDA warning letters and citations and that the lab's founder was manufacturing results and had to be terminated; and that (ii) Microconsult's noncompliant testing methods and deficient records, among other violations.

(D.I. 1 ¶ 80). These allegations, viewed together with the rest of the Complaint, are not sufficient to meet the heightened pleading standard. On its own, the statement about a lack of operational and performance issues is vague. Plaintiffs do not allege with specificity when the statements were made or what was said. The Complaint also does not specify who the lab founder at issue was, when that lab founder was terminated, or what kinds of documents Plaintiffs requested or Defendants provided. Although Plaintiffs mention FDA warning letters, they do not allege that Ms. Geveda or Mr. Burlin made any statements about the FDA that could be viewed as false or misleading. I thus do not think that Plaintiffs have pleaded any material misrepresentations or omissions.

### 3. Scienter

Defendants object to the Magistrate Judge's finding that Plaintiffs have adequately pleaded scienter. (D.I. 39 at 7; D.I. 40 at 6). Defendants argue that the Report ignores Plaintiffs' failure to satisfy the PSLRA pleading standard and does not "engage in the [required] comparative analysis of competing inferences." (D.I. 39 at 7). Tilia argues that Plaintiffs only

11

make "conclusory group allegations charging Defendants generally" instead of pleading "any fact showing that Tilia had actual knowledge of the falsity of any statements." (D.I. 40 at 7).

Defendants contend that alleging scienter by virtue of Ms. Geveda's and Mr. Burlin's positions at Topco is insufficient. (D.I. 39 at 7–8). Defendants also contend their "alleged failure to provide documents concerning Topco, including financials, says nothing about Defendants' intent to mislead." (*Id.* at 8). Defendants argue that language in the Subscription Agreement contradicts Plaintiffs' argument. (*Id.*). "[A] more compelling nonfraudulent explanation," Defendants contend, "is that Plaintiffs recognized they had all the information they needed to proceed." (*Id.*). Lastly, Defendants argue a general motive—"enabl[ing] Topco to purchase Plaintiffs' business"—that is common to all officers and directors, not Ms. Geveda and Mr. Burling only, cannot establish scienter. (*Id.* at 9 (quoting D.I. 37 at 18); *see also* D.I. 40 at 8).

Under the PSLRA, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," i.e., that defendants acted with "scienter." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 242 (3d Cir. 2013) (quoting 15 U.S.C. § 78u–4(b)(2)(A)). Scienter is defined as a "'knowing or reckless' mental state 'embracing intent to deceive, manipulate, or defraud.'" *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (quoting *Avaya*, 564 F.3d at 252). Recklessness is "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Avaya*, 564 F.3d at 267 n.42 (citation omitted). A strong inference of scienter is one that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

Even if any of Plaintiffs' allegations constituted material misrepresentations, I do not think that Plaintiffs have alleged scienter with sufficient particularity. The Complaint does not plead facts suggesting Ms. Geveda and Mr. Burlin knew about any FDA correspondence. Plaintiffs allege that the FDA sent a letter in June 2019, but the Complaint does not allege facts to suggest Ms. Geveda and Mr. Burlin knew the purported deficiencies in that communication still existed two years later. According to the Complaint, additional citations were issued in March 2021, only one month before "Defendants' first pitch to Mr. Bellinger." (D.I. 1 ¶ 55–56). The Complaint, however, does not allege a basis for imputing knowledge of those citations to Ms. Geveda and Mr. Burlin. For instance, the Complaint does not allege that Ms. Geveda and Mr. Burlin attended any board meetings between the issuance of the citations in March 2021 and the pitch in April 2021. Although Plaintiffs allege that Topco's board members controlled all aspects of the company's business, the Complaint does not suggest that Ms. Geveda and Mr. Burlin had the requisite knowledge at the time they approached the Bellingers.[6] I therefore conclude that Plaintiffs' allegations do not meet the scienter standard under the PSLRA.

### B. Texas Securities Act

The Complaint correctly states that there is federal jurisdiction because of the federal securities claim. (*Id.* ¶ 21). The other three claims are state law claims over which there is supplemental jurisdiction. (*Id.* ¶ 22). There is no assertion of diversity jurisdiction. The citizenship of Defendants cannot be inferred as they are all LLCs or LPs, and the citizenship of the members and partners is not alleged.

---

[6] The Complaint is similarly vague in its allegation that Ms. Geveda and Mr. Burlin knew about any problems with the former CEO. As explained above, Plaintiffs do not plead the real reason for the former CEO's departure.

Because I am dismissing the Securities Exchange Act claim, I find it appropriate to dismiss the state law claim under the Texas Securities Act.[7] *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). I therefore grant Defendants' motion to dismiss Count IV of the Complaint.

## IV.  CONCLUSION

For the reasons discussed above, I will adopt the Magistrate Judge's Report and Recommendation with respect to Counts I and II of the Complaint. I will reject-in-part the Report and Recommendation with respect to Counts III and IV. I therefore GRANT Defendants' motions to dismiss. Dismissal is without prejudice.

An appropriate order will issue.

---

[7] I would also find it appropriate to dismiss the breach of contract and common law fraud claims on this basis had I not also had an unobjected-to recommendation to dismiss them on the merits.

14