IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GINA R. BELLINGER, on behalf of herself and as trustee for the JOHN A. BELLINGER 2018 FAMILY TRUST and the GINA R. BELLINGER 2010 TRUST, and JOHN W. BELLINGER, as trustee for the LAUREN V. BELLINGER 2018 FAMILY TRUST and the JOHN W. BELLINGER 2010 TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>LABORATORIES TOPCO LLC, WARBURG PINCUS (CALLISTO) PRIVATE EQUITY XII (CAYMAN), L.P., WARBURG PINCUS (EUROPA) PRIVATE EQUITY XII (CAYMAN), L.P., WARBURG PINCUS (GANYMEDE) PRIVATE EQUITY XII (CAYMAN), L.P., WARBURG PINCUS PRIVATE EQUITY XII-B (CAYMAN), L.P., WARBURG PINCUS PRIVATE EQUITY XII-D (CAYMAN), L.P., WARBURG PINCUS PRIVATE EQUITY XII-E (CAYMAN), L.P., WP XII PARTNERS (CAYMAN), L.P., WARBURG PINCUS XII PARTNERS (CAYMAN), L.P., and TILIA FUND I AIV, L.P.,<br><br>Defendants. | Civil Action No. 23-695-RGA |

## MEMORANDUM ORDER

Before me are the Warburg Pincus Defendants' Motion to Dismiss and Tilia's Motion to Dismiss. (D.I. 67, 68). I have considered the parties' briefing. (D.I. 69, 70, 75, 79, 80). For the reasons set forth below, these motions are DENIED.

1

I assume familiarity with the facts of this case, which can be found in my prior ruling on Defendants' Motions to Dismiss. *See Bellinger v. Lab'ys Topco LLC*, 2024 WL 1328836 (D. Del. Mar. 28, 2024). In that ruling, I granted Defendants' Motions to Dismiss without prejudice. *Id.* at *6. Following my grant of that motion, Plaintiffs filed their First Amended Complaint ("FAC"), alleging violations of section 10(b) of the Securities Exchange Act and of the Texas Securities Act, and Defendants moved to dismiss the FAC. (D.I. 59, 67, 68).

Federal Rule of Civil Procedure 8(a)(2) requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief..." Federal Rule of Civil Procedure 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads

2

factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

All securities fraud claims are subject to the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act (the "PSLRA"). *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Put another way, Rule 9(b) requires that a plaintiff set forth "the who, what, when, where, and how" of the alleged fraud. *Avaya*, 564 F.3d at 253. Under the PSLRA, plaintiffs must: (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading"; and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 321 (2007) (quoting 15 U.S.C. § 78u–4(b)(1) and 15 U.S.C. § 78u–4(b)(2)). The requisite state of mind, or "scienter," is defined as a "'knowing or reckless' mental state 'embracing intent to deceive, manipulate, or defraud.'" *OFI Asset Mgmt. v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) (quoting *Avaya*, 564 F.3d at 252). When considering a defendant's scienter, courts should also "consider plausible, nonculpable explanations for the defendant's conduct." *Tellabs*, 551 U.S. at 324.

"To recover damages for violations of section 10(b) [of the Securities Exchange Act]…, a plaintiff must prove '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss

3

causation.'" *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (quoting *Amgen Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 460-61 (2013). Under the PSLRA, the "materiality requirement is satisfied when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (cleaned up). Although there is no affirmative duty to disclose all material information, disclosure is required if it is necessary "to make... statements made, in the light of the circumstances under which they were made, not misleading." *Id.* at 44 (quoting 17 C.F.R. § 240.10b–5(b)). Misrepresentations and omissions are immaterial as a matter of law only if they "are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality." *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 369 n.13 (3d Cir. 1993).

Plaintiffs allege that Defendants made the following false and misleading representations: "that (i) the Certified Labs were performing well and had 'no material operational or performance issues'; (ii) Plaintiffs' 'investment into Certified Group would be valuable' and would allow Plaintiffs to invest into new and 'more profitable' areas in the laboratory testing industry, such as the nicotine and cosmetic testing industries; and (iii) that the Certified Labs generated '$160 million' in revenue and the Company's 'EBITDA was strong.'" (D.I. 59 ¶ 84).

Plaintiffs' allegations as to (ii) and (iii) are insufficient to state a claim. As I noted in my earlier opinion on the initial Motions to Dismiss, "the statements about high growth potential and strong EBITDA are puffery. 'Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language.'" *Bellinger*, 2024 WL 1328836, at *4 (quoting *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993)). I find too that Defendants' assertions that Plaintiffs' "investment into Certified Group would be valuable" and would allow Plaintiffs to

4

invest in new and "more profitable" area in the laboratory testing industry constitute puffery, as they are similarly "so broad and vague that no reasonable investor would rely on them." *Id.*

That said, I find that Plaintiffs properly plead that Defendants made a false and misleading representation in stating that the Certified Labs had "no material operational or performance issues" in spite of the serious ongoing issues at one of the Certified Labs, ABC Testing. (D.I. 59 ¶¶ 71-73). I had previously found that Plaintiffs failed to plead facts with sufficient particularity to support a finding that this statement was material. *Bellinger*, 2024 WL 1328836, at *5. For the reasons laid out below, Plaintiffs have corrected the previous deficiencies in their pleading.

I had found Plaintiffs' original complaint defective because "Plaintiffs [did] not allege with specificity when the statements were made or what was said." *Id.* Plaintiffs have since corrected this defect; they properly plead that Burlin and Geveda each stated to Plaintiffs, at a May 2021 dinner, that the Certified Labs had "no material operational or performance issues." (D.I. 59 ¶¶ 49-50). I had originally found that the complaint did not specify who the lab founder at issue was, when that lab founder was terminated, or what kinds of documents Plaintiffs requested or Defendants provided; all these defects have similarly been adequately remedied in the FAC. (D.I. 59 ¶¶ 55, 72). Finally, I had previously stated, "Although Plaintiffs mention FDA warning letters, they do not allege that Ms. Geveda or Mr. Burlin made any statements about the FDA that could be viewed as false or misleading." *Bellinger*, 2024 WL 1328836, at *5. This defect, too, has been cured. Defendants now properly identify the FDA letters and other issues stemming from at least one of the Certified Labs' noncompliance with FDA regulations in sufficient detail so as to make a plausible showing why Burlin's and Geveda's statements that

there were "no material operational or performance issues" could, taken as a whole, be viewed as false or misleading. (D.I. 59 ¶¶ 26-28, 38-42, 52, 71-73, 86).

The cases cited by Defendants do not convince me that the "no material operational or performance issues" statement is insufficient. For instance, Defendants cite *StoneMor Partners* for the proposition that "vague and general statements of optimism are non-actionable precisely because they are not material—a reasonable investor would not base decisions on such statements." *Fan v. StoneMor Partners LP*, 927 F.3d 710, 716 (3d Cir. 2019); (D.I. 69 at 13). The court in *StoneMor* found, however, that the statements in question there were nonactionable, not because they formed "vague and general statements of optimism" but rather because "clear and consistent disclosures were made available to investors… that render its alleged misrepresentations not misleading." *Id.* at 717. Even though I agree with Defendants that their statement that Certified Group "was performing well" does constitute a "vague and general statement of optimism" that would not by itself be actionable, the statement that there were "no material operational or performance issues," read in the whole context of the pleadings in the FAC, does constitute an actionable statement. I view Geveda's and Burlin's denial of any material operational or performance issues as more akin to an "affirmative[] characteriz[ation]" of certain operational conditions at Certified Group, which puts those representations "in play" such that "the securities laws are clearly implicated if [Geveda and Burlin have] nevertheless intentionally or recklessly omit[ted] certain facts contradicting these representations." *Shapiro v. UJB Financial Corp.*, 964 F.2d 272, 282 (3d Cir. 1992).[1] "Once a company has chosen to speak

---

[1] The other cases Defendants cite are similarly unpersuasive. For example, Defendants cite *UBS* for the proposition that a statement that UBS "complied with all applicable laws" was non-actionable puffery. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014); (D.I. 69 at 14). There, however, the court found the statements to be "explicitly aspirational, with qualifiers such as 'aims to,' 'wants to,' and 'should.'" *Id.* Likewise,

6

on an issue—even an issue it had no independent obligation to address—it cannot omit material facts related to that issue." *Williams v. Globus Medical, Inc.*, 869 F.3d 235, 241 (3d Cir. 2017).

Defendants argue that Plaintiffs did not adequately allege that the operational or performance issues identified at one of the Certified Labs were still ongoing as of the May 2021 dinner or that Plaintiffs would have been aware of these issues. I do not agree. Plaintiffs adequately allege that Geveda, as Warburg's appointed member of the Board, "controlled all aspects of the Company's operations…[,] supervised [the] day-to-day management of Certified Group and the Certified Labs, [and] received copies of key financial reporting and correspondence about the status of the labs, including profit and loss statements, and audit reports for each lab." (D.I. 59 ¶ 48). Plaintiffs also adequately plead that Tilia would have been aware of such ongoing issues: "Geveda regularly shared this information… with Burlin… [who was] Tilia's appointed member of the Certified Board." (D.I. 59 ¶ 48). Plaintiffs plead that Geveda and Burlin were aware of the issues as of April 2020, that they received periodic updates on attempts to remedy the issue, and that the issues with one of the Certified Labs was still ongoing by the time Mr. Bellinger took over as CEO in August of 2021. (D.I. 59 ¶¶ 42, 48, 71). Thus, after accepting the well-pleaded allegations in the FAC as true and viewing them in the light most favorable to the plaintiff, I find that Plaintiffs in this case plead sufficient facts to suggest that operational or performance issues, of which Geveda and Burlin were aware, were ongoing during the May 2021 dinner.

---

I cannot agree with Defendants' argument that the fact that Geveda and Burlin made this statement at a dinner in May 2021, attended by Mr. Bellinger and Michael Pan, a Warburg Managing Director, counsels against its materiality. (D.I. 59 ¶ 47, D.I. 69 at 14). The fact that Geveda and Burlin had been acquainted with Mr. Bellinger for years by this point, had made several bids to acquire FSNS (Mr. Bellinger's company), and had brought along a Managing Director from Warburg Pincus to this dinner meeting all weighs against the supposed "informality" of this setting. (D.I. 59 ¶¶ 31, 44-47).

I find that the FAC adequately alleges that the failure to disclose the ongoing issues with ABC Testing, one of the Certified Labs, was material. Though Geveda and Burlin may not have had any independent obligation to disclose the ongoing issues between ABC Testing and the FDA, disclosure of these ongoing issues became necessary when they each allegedly asserted the absence of material operational or performance issues at the Certified Labs. *See Matrixx* 563 U.S. at 44; (D.I. 59 ¶ 49-50). I am convinced that there is a substantial likelihood that a reasonable investor would have viewed a disclosure that a food testing lab was suffering from ongoing non-compliance with FDA standards as having substantially altered the total mix of information available, which renders the non-disclosure by Defendants material. *Id.* at 38; (D.I. 59 ¶¶ 26-28). This is especially the case when, against a yearly revenue of $160 million, Certified Group was nevertheless forced to spend "millions of dollars" in an attempt to resolve the issues at ABC Testing. (D.I. ¶¶ 50, 72). At any rate, I am unable to conclude that the misrepresentation and subsequent omission of the problems at ABC Testing could be viewed as "so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality," and I thus find that the Plaintiffs have met their burden in pleading materiality. *In re Donald J. Trump*, 7 F.3d at 369 n.13.

Finally, I find that Plaintiffs adequately plead that Defendants had the requisite scienter when they claimed that Certified Group had no material operational or performance issues. Plaintiffs allege that Geveda and Burlin "supervised [the CEO's] day-to-day management of Certified Group and the Certified Labs, [and] received copies of key financial reporting and correspondence about the status of the labs, including profit and loss statements, and audit reports for each lab." (D.I. 59 ¶ 48). These allegations allow for the reasonable inference that Geveda and Burlin had made their misrepresentation at the May 2021 dinner with knowledge of

the ongoing issues at ABC Testing. I moreover find this inference of scienter is "cogent and at least as compelling as any opposing inference of nonfraudulent intent" at this stage. *Tellabs*, 551 U.S. at 314.

As Plaintiffs meet the more demanding pleading requirements under the Securities Exchange Act and the PSLRA, I find that they have stated an actionable claim under the less demanding requirements of the Texas Securities Act as well.

Accordingly, the Warburg Pincus Defendants' Motion to Dismiss (D.I. 67) and Tilia's Motion to Dismiss (D.I. 68) are DENIED.

IT IS SO ORDERED.

Entered this 8th day of October, 2025

_____
United States District Judge